UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN A. SCHIPPA,

    Plaintiff,

v.                                                                     Case No. 1:18-cv-417
                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his application for disability insurance benefits (DIB).

Plaintiff was involved in a motor vehicle accident in February 2012, during which he sustained injury in the cervical and upper back region. PageID.41. The ALJ found that "[i]n September 2012, having failed conservative treatment measures, the claimant underwent three-level cervical fusion from C4 to C7 due to cervical spondylotic myelopathy, severe spinal stenosis, and large central disc herniation (3F/22)." *Id*. Based on this history, plaintiff alleged a disability onset date of April 20, 2012. PageID.190.

Plaintiff identified his disabling conditions as: neck injury with multi-level fusion; bilateral shoulder pain right worse; bilateral arm spasms and pain; right foot injury and deformity; right leg pain; chronic severe pain between shoulder blades upper back; bilateral hip pain; severe chronic headaches; and, depression and anxiety with loss of concentration. PageID.194. Prior to

1

applying for DIB, plaintiff completed high school and had past employment as a mold changer at an injection molding plant. PageID.195. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on April 4, 2017. PageID.35-49. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for disability benefits failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 20, 2012, and that he met the insured status requirements of the Social Security Act through December 31, 2017. PageID.37. At the second step, the ALJ found that plaintiff had severe impairments of: "degenerative disc disease/damage, status post C4 to C7 discectomy with fusion; anxiety; depression; adjustment disorder with mixed anxiety and depressed mood; somatic symptom disorder with predominant pain, persistent, severe; and panic disorder. *Id*.

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), limited to work permitting the Claimant to: Never lift from below waist level or above shoulder level; Only occasionally reach with the right upper extremity; Never reach overhead, bilaterally; Occasionally stoop, but never crouch, crawl, kneel, or climb stairs/ramps; Never be exposed to ropes, ladders, scaffolding or unprotected heights; Understand and remember simple instructions; Perform simple, routine tasks; Engage in occasional interaction with supervisors and the public; Engage in tasks that do not involve tandem work/production pacing (e.g., assembly line work); and Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the tasks performed.

PageID.39-40 (bullet points omitted). The ALJ also found that plaintiff was unable to perform his past relevant work. PageID.48.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.48-49. Specifically, the ALJ found that claimant could perform the requirements of occupations in the

national economy including sorter (100,000 jobs); bench assembler (200,000 jobs); and surveillance system monitor (80,000 jobs). PageID.PageID.49. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from April 20, 2012 (his alleged onset date) through April 4, 2017 (the date of the decision). PageID.49.

## III. DISCUSSION

Plaintiff set forth four issues on appeal.

### A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.

Plaintiff contends that the ALJ failed to apply "the seven factor controlling weight test to determine the appropriate weight to give the [treating] doctor's opinion." Plaintiff's Brief (ECF No. 11, PageID.858). However, plaintiff does not address any particular doctor, any particular opinion, or any particular statement by the ALJ. The only error addressed in the brief is that, "the ALJ was obliged to provide an explanation regarding Plaintiff's purported ability to effectively [sic] enough to perform work in light of the RFC [residual functional capacity] study which determined he could not perform even sedentary work and which was fully endorsed by Dr. Gustafson (PageID.791)." *Id*. at PageID.859.[1] Plaintiff then went on to state that the hypothetical question posed to the vocational expert (VE) was inadequate.[2]

The RFC study referenced by plaintiff does not appear at the page cited in the brief (PageID.791). Defendants point out that this opinion appears at PageID.800 (Exhibit 21F, page 1). The ALJ addressed this RFC as follows:

> In October 2014, occupational therapist Barbara Rounds conducted a residual functional capacity evaluation of the claimant, where she concluded the claimant functioned at less than the full range of sedentary work and did not appear capable of engaging in any sustained gainful activity (13F/11). In December 2014,

---
[1] Plaintiff's brief did not set forth discrete arguments with respect to each alleged error. Rather, the brief consisted of a five-page narrative which combined aspects of a number of arguments. PageID.857-861.
[2] Plaintiff did not identify a flawed hypothetical question as an error.

5

Dr. Gustafson stated that he agreed with the functional limitations as identified by Ms. Rounds (21F/1). At the evaluation, it was noted the claimant tolerated sitting for forty minutes, standing thi1ty-five minutes, walking for 500 feet and lifting/carrying fifteen to twenty pounds (13F/6). In addition, the claimant could not lift overhead secondary to his right shoulder complaints (13F/7). Ms. Rounds concluded the claimant could sit for less than thirty minutes at one time and for about two to three hours total in an eight-hour workday (13F/9). She assessed the claimant could stand for less than twenty minutes at one time and for less than two hours total in an eight-hour workday (13F/9). Ms. Rounds also opined the claimant could walk for 500 feet without interruption and for less than two hours in an eight-hour workday (13F/9). Ms. Rounds assessed the claimant needed a job that permitted changing positions at will from sitting, standing or walking and sometimes would need to take unscheduled breaks (13F/9). She opined the claimant could occasionally lift ten pounds at waist level and rarely twenty pounds (13F/10). She assessed the claimant should never lift floor to waist or lift overhead (13F/10). Ms. Rounds indicated the claimant could occasionally carry ten pounds (13F/10). She opined the claimant could occasionally look down and rarely turn right or left, look up, or hold his head in a static position (13F/10). She indicated the claimant could occasionally twist, stoop/bend, rarely climb, and never crouch/squat (13F/10). Ms. Rounds assessed the claimant could reach in all planes for less than six percent with the right upper extremity and less than sixty-six percent with the left upper extremity during an eight-hour workday (13F/11). She indicated the claimant could never reach overhead with the right upper extremity and less than thirty-three percent of an eight-hour day with the left upper extremity (13F/11). Ms. Rounds opined the claimant would be absent from work more than four days per month (13F/11). She indicated the claimant's symptoms would frequently to constantly interfere with her work pace and/or attention/concentration needed to perform simple work tasks (13F/11).

I have considered the opinion of Ms. Rounds, which was countersigned by Dr. Gustafson, and assign it limited weight, as it is not fully consistent with the medical evidence of record. In particular, the assessed standing, walking, sitting and neck limitations are not consistent with the evidence of record, which documents the claimant often ambulated with a normal gait and demonstrated 5/5 muscle strength of the cervical spine and all four extremities (2F/2; 5F/5, 25; 8F/2, 5, 8, 11, 14, 17, 20; 10F/24, 115; 23F/2). The forward and lateral reaching limits are not supported by the record as a whole. Moreover, the assessment of changing positions at will is not supported by the record as a whole. In addition, the assessment that the claimant would require unscheduled breaks and excessive absences is conclusory and provided without explanation. However, I assign great weight to the assessment often pounds lifting and carrying, no floor to waist lifting, no overhead lifting, occasionally twisting and stooping/bending, rarely climbing and never crouching/squatting or climbing ladders, as it is consistent with the record as a whole. Finally, I assign no weight to the statement the claimant is "not capable of working" as that is reserved to the Commissioner.

PageID.45-46.

The opinion of Dr. Gustafson in this case involved a one page fill-in-the-blank statement that he has treated plaintiff since 2003, that the most recent treatment was September 23, 2014, that plaintiff's impairment has lasted or is expected to last at least 12 months, that "the condition(s) addressed in this report appear to be [checkmark on 'Permanent']", with the following clinical and diagnostic findings that affect the patient's ability to work, "chronic neck + radicular pain in spite of 9/2012 ACDF [anterior cervical discectomy and fusion] and pain clinic treatment." PageID.800. Finally, in a separate section of the document, Dr. Gustafson was given two choices with respect to the functional limitations identified in Ms. Rounds' RFC, *i.e.*, "agree / disagree." PageID.800. The doctor circled "agree". PageID.800.

This Court has rejected the claim that a conclusory statement by a physician that the physician "agrees" with an RFC evaluation performed by a physical therapist constitutes an "opinion" granted deference under the treating physician rule:

> [T]he Physician Reviews submitted by plaintiff are not opinions offered by treating physicians subject to the treating physician rule. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2).
>
> Here, the treating physicians did not offer any opinions regarding plaintiff's condition. Rather, they were given the choice to agree or disagree with the opinions expressed by Ms. Rounds, a third-party who was not an acceptable medical source. To accomplish this, plaintiff's physicians filled out a one-page Physician Review which consisted of three questions. First, the doctor marked either "yes" or "no" to the statement, "Have the patient's impairments lasted or can they be expected to last at least 12 months?" Second, the doctor placed a checkmark in response to the following statement, "Prognosis: Based on my contact with the above-named patient, the condition(s) addressed in this report appear to be: __ Permanent __ Temporary __ Progressive __ Stable". Third, the doctor circled the word "agree" or "disagree" after the following statement, "On behalf of my patient, I have reviewed the RFC report along with the supportive documentation completed by

7

Barbara Rounds, OTR/L and (*Circle*) **agree/disagree** with the functional limitations as identified." *See* Physician Reviews at PageID.854, 856, 858. The form also provided two spaces for the doctor to address plaintiff's condition. One space allowed the doctor to "Identify clinical and diagnostic findings that support the recommended restrictions and/or affect the patient's ability to work," and the other space allowed the doctor to include "Comments/Modifications". *Id.*

ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted). In such cases, where the physician includes remarks on a check-off form such as noting that the "plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety," these types of cryptic remarks are not sufficient to explain the doctor's findings. *Id.* at 566-67.

*Laporte v. Commissioner of Social Security*, No. 1:15-cv-456, 2016 WL 5349072 at *6 (W.D. Mich. Sept. 26, 2016) (emphasis in original). For these same reasons, plaintiff's claim of error with respect to Dr. Gustafson is denied.

### B. The ALJ did not have substantial evidence to support her finding that plaintiff could have performed sedentary work.

Plaintiff contends that the ALJ's finding that plaintiff could perform sedentary work is not consistent with the regulations and SSRs (Social Security Rulings) with respect to sedentary work. In plaintiff's words,

> Another error is that the ALJ's finding that Plaintiff could perform sedentary work is at direct odds with SSR 83-14 and 83-10. SSR 83-14 explains that "[e]xample 1 of section 201.00(h) in Appendix 2 illustrates a limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant and, thus, warrants a conclusion of disabled. Furthermore, SSR 83-10 explains that sedentary work requires good use of the hands and arms for repetitive hand-finger actions. Here, the ALJ limited Plaintiff to limited lifting, carrying, and reaching (PageID.38) [sic] nipulation [sic] bilaterally." Therefore, the ALJ committed clear legal error.

PageID.860.

8

Plaintiff's claim is without merit. First, the ALJ did not expressly limit plaintiff's manipulation with his hands. As discussed, the ALJ limited plaintiff in pertinent part as follows: "Never lift from below waist level or above shoulder level; Only occasionally reach with the right upper extremity; Never reach overhead, bilaterally[.]" PageID.39. Second, plaintiff is incorrect in claiming that "example 1" directs a finding of disability. While the SSRs from 1983 refer to "example 1", there is no "example 1" in the current regulations. *See Prentice v. Barnhart*, 256 F. Supp. 2d 4, 7 (D. Me. 2003) (discussing the deletion of example 1 effective September 27, 2001). In addition, even when the example was in place, it did not direct a finding of disability. *See Abbott*, 905 F.2d at 907 (while § 201.00(h) codified the rule that a Grid may not be used to preclude a finding of disability where a significant nonexertional impairment exists, this section did not direct a finding of disability when a case presented facts analogous to those given in an example; "the example is no more than an illustration of a situation in which an ALJ's decision to award benefits would be 'appropriate,' despite the contrary directive of the grid."). Accordingly, plaintiff's claim of error is denied.

### C. The ALJ committed reversible error by failing to consider the reasons for the gaps in plaintiff's medical treatment.

Plaintiff contends that the ALJ erred by failing to follow up on questions raised during the administrative hearing regarding gaps in his treatment. At the outset of the administrative hearing, plaintiff testified that he receives Medicaid, that has no income, and that his roommate pays the rent. PageID.71. During the hearing, the ALJ stated that "what strikes me most is how little treatment you've had since 2014" other than visiting a chiropractor and getting prescriptions from his family doctor. PageID.79. In response, plaintiff stated that he went to the pain clinic but that he "felt like it was making me worse," that the injections were "hurting me

9

more than help[ing]," that the surgery failed with the fusion, and that he is scared of another surgery, and that he is taking prescription medicine consisting of two "Norcos" and one Cymbalta per day. PageID.79-80.

Plaintiff contends that the ALJ erred because the decision did not include this discussion regarding plaintiff's gap in treatment. Plaintiff's Brief (ECF No. PageID.11, PageID.857). In this regard, plaintiff contends that "the ALJ also wrongly discredited Plaintiff's ability due to gaps in treatment" and cites two court cases which "have found error in somewhat similar circumstances." Plaintiff's Brief at PageID.860. While plaintiff makes these contentions, he does not address the specific gaps in treatment, address the holdings in the cited cases, or explain the "somewhat similar circumstances."

Plaintiff's cursory statements fail to develop an argument as to how the ALJ erred and why plaintiff is entitled to a reversal and remand. The Court is aware that Social Security Ruling (SSR) 96-7p prohibits an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure, such as "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *8 (S.S.A. July 2, 1996). While plaintiff suggests in his reply brief that indigency played a part in the medical treatment "gap", he did not testify that he was unable to afford treatment. Rather, plaintiff testified that he was on Medicaid felt that injections did not help and did not want another surgery. Accordingly, plaintiff's claim of error is denied.

> **D.** **The ALJ committed reversible error by using improper boilerplate language to justify her decision.**

Finally, plaintiff contends that the ALJ improperly used a "faulty template" of "boilerplate language" to justify her decision contrary to the court's decision in *Bjornson v. Astrue*,

10

671 F. 3d 640 (7th Cir. 2012). PageID.857, 861.[3] Plaintiff has done little more than cite this case. This Court has previously rejected a cursory claim that the Seventh Circuit's ruling in *Bjornson* requires that an ALJ's decision should be reversed for using the agency's defective "boilerplate" language or a defective "template". *See, e.g., Childs v. Commissioner of Social Security*, 2019 WL 1397080 at *5 (W.D. Mich. March 28, 2019). Plaintiff has not presented a meaningful argument in support of this error. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is deemed waived.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 23, 2019 /s/ Ray Kent
United States Magistrate Judge

---

[3] While plaintiff refers to a previous discussion of *Bjornson v. Astrue* at page 14 (PageID.857) of his Brief, *see* PageID.861, there is no such previous discussion.